# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| LARRY D. BITTICK, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 06-0504-CV-W-FJG |
| DAVE DORMIRE, et al., | ) ) ) |
| Respondents. | ) ) |

## ORDER

Pending before the Court is Petitioner Larry D. Bittick's Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 by a Person in State Custody. (Doc. No. 24).[1] Petitioner is currently confined in the Jefferson City Correctional Center. Dave Dormire is the Superintendent of the Jefferson City Correctional Center and is, therefore, the proper party respondent. Since petitioner is subject to consecutive sentences for his offense, Jeremiah (Jay) Nixon is a proper party respondent.

**I. BACKGROUND.**

As stated by the Missouri Court of Appeals in its Order affirming the denial of Petitioner's Rule 29.15 motion on November 22, 2005 (see Respondents' Exhibit J, pp. 1-3), the facts and procedural history in this matter are as follows:

---

[1] Petitioner was given the opportunity to file an amended traverse. See Doc. No. 23, setting deadline for filing amended traverse as May 28, 2007. Petitioner failed to timely file an amended traverse, and on June 7, 2007, this Court ordered petitioner to show cause on or before June 13, 2007, why the Court should not rule based on the record currently before it. See Order, Doc. No. 26. Petitioner did not timely file a written response to the Court's Order to show cause. Therefore, the Court is ruling on this matter based on the information contained in the file as of the date of this Order.

Appellant Larry D. Bittick was charged in Platte County with one count of assault of a law enforcement officer in the second degree, section 565.082, and three counts of assault in the second degree, section 565.060.

A jury trial was held. Viewed in the light most favorable to the judgment, the pertinent evidence at trial was as follows. On the morning of January 14, 1998, Bette Stewart and her passenger Sharon Fatino were involved in a one-vehicle accident on southbound I-29 caused by icy conditions on the roadway. Ms. Stewart's vehicle struck a concrete median and came to rest in the left lane of traffic. The two women exited the vehicle, and tow-truck driver James Gresham arrived on the scene. When Kansas City Police Officer Thomas R. Meyers responded, he parked his police car in the far-left lane, north of Ms. Stewart's vehicle. The officer left his emergency lights flashing and began walking toward the Stewart vehicle to investigate. At that time, Larry Bittick came upon the accident scene, traveling at approximately 70 to 75 miles per hour. Despite the presence of a stopped police car with emergency lights flashing and other traffic that had slowed and moved into the far-right lane to allow room near the disabled car. Bittick did not attempt to slow down until his vehicle started sliding. Bittick's vehicle struck and killed Officer Meyers. Bittick's vehicle then struck Ms. Stewart's vehicle, which in turn struck Ms. Stewart, Ms. Fatino, and Mr. Gresham, injuring all three. Tests established that Bittick's blood-alcohol level was twice the legal limit around the time of the accident. Bittick, who testified in his own defense, admitted having one drink that morning, but denied being intoxicated. His defense was that he was not intoxicated, not exceeding the 70-mph speed limit, and that the accident was a result of the adverse weather conditions.

The jury convicted Bittick on all four counts and recommended sentences of fifteen years for the charge of assault on a law enforcement officer and five years and a fine on each of the three second-degree assault charges. The court imposed the recommended sentences and ordered that they be served consecutively.

Bittick's conviction was affirmed on direct appeal via per curiam order and memorandum on May 2, 2000. *State v. Bittick*, WD 56704, 39 S.W.3d 927 (Mo. App. 2000). His sole point on appeal was that the evidence was insufficient to establish that he knew or was aware that Officer Meyers was a law enforcement officer, or that he was "criminally negligent" with regard to that fact.

Bittick timely filed a *pro se* Rule 29.15 motion for post conviction relief, seeking to have his convictions and sentences set aside. Appointed counsel filed an amended Rule 29.15 motion. Bittick sought to discharge counsel and for leave to proceed in his original motion. The court denied Bittick's motions, and proceeded on the amended motion. The motion court held an

2

evidentiary hearing. The court denied the motion. On appeal, this court reversed, holding that the motion court erred in denying Bittick's *pro se* motion to disqualify appointed counsel and strike his amended Rule 29.15 motion. *Bittick v. State*, 105 S.W.3d 498, 499 (Mo. App. 2003). The case was remanded with directions to allow Bittick to "proceed pro se at his postconviction relief hearing." *Id.*

Bittick then filed an amended *pro se* Rule 29.15 motion, which the motion court allowed. Bittick argued, *inter alia*, that he was denied the right to effective assistance of trial and appellate counsel and that the trial court abused its discretion in ordering his sentences to run consecutively. The court held and evidentiary hearing. Bittick's trial counsel and direct appeal counsel testified. The motion court issued findings of fact and conclusions of law denying the motion.

## II. STANDARD OF REVIEW.

This Court will "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). An application for writ of habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "In conducting a habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Accordingly, "'[a] federal court may not re-examine a state court's interpretation and application of state law.'" McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996) (quoting Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994)). Pursuant to 28 U.S.C. §

2254(e)(1), in habeas proceedings, the Court presumes state court findings of fact are correct unless the petitioner establishes, the respondent admits, or the record shows otherwise. Additionally, the petitioner may produce evidence that convincingly establishes that the state court's findings were erroneous. Id. (citing Thompson v. Keohane, – U.S. –, 116 S. Ct. 457, 463-64 (1995)).

Further, procedural restrictions, such as exhaustion and default, also limit the Court's review of substantively valid habeas corpus claims. At the time this federal habeas petition was filed, all claims in the petition were exhausted because petitioner has either fairly presented his claims to the Missouri state courts or because he is procedurally barred from presenting claims that he has not given the Missouri state courts the opportunity to review. See Coleman v. Thompson, 501 U.S. 722, 732 (1991) (defaulted claims meet the technical requirements for exhaustion). Therefore, there remain no unexhausted issues in the petition. Furthermore, it appears that petitioner has not defaulted on any of the issues presented in the petition.

### III. DISCUSSION.

Petitioner asserts four grounds upon which he alleges he is being illegally incarcerated: (1) Petitioner was denied his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments in that there was no evidence from which a reasonable juror could conclude beyond a reasonable doubt that petitioner was guilty of the offense of assault upon a law enforcement officer because there was no evidence from which a reasonable juror could conclude beyond a reasonable doubt that petitioner was aware that Thomas Meyers was a law enforcement officer; (2) Petitioner was denied his rights under the Sixth Amendment of the Constitution to effective assistance of counsel in that his

4

appellate counsel failed to perform as a reasonably competent attorney would in that she failed to brief and argue on appeal that the involuntary manslaughter statute prevails over the assault on a law enforcement officer statute because the victim died immediately from his injuries, and as a result, petitioner was prejudiced; (3) Petitioner was denied his rights under the Equal Protection Clause of the U.S. Constitution in that the trial court sentenced him disproportionately more harshly than other defendants whose wrongful acts were virtually identical if not more egregious, indicating bias and prejudice against the petitioner or bias and prejudice in favor of the particular victim of petitioner's wrongful acts; and (4) Petitioner was denied his Sixth Amendment Rights to effective assistance of counsel in that his trial counsel failed to perform as a reasonably competent defense attorney in that he failed to request an instruction on the lesser-included offense of assault in the third degree as to each count of the indictment. Each ground for relief will be examined below.

1. **Alleged violation of right to due process under the Fifth and Fourteenth Amendments in that insufficient evidence was presented in order to convict petitioner of assault on a law enforcement officer in the second degree.**

Petitioner argues that there was insufficient evidence to convict him of assault of a law enforcement officer in the second degree because there was no evidence from which a reasonable juror could have found beyond a reasonable doubt that he knew or was aware that Thomas Meyers was a law enforcement officer, or that petitioner acted with criminal negligence as to whether Meyers was a law enforcement officer.[2] Petitioner states that

---

[2]RSMo. § 565.082.1 (1994) provides: "A person commits the crime of assault of a law enforcement officer in the second degree if he: (1) Attempts to cause or knowingly causes physical injury to a law enforcement officer by means of a deadly weapon or dangerous instrument; (2) Recklessly causes serious physical injury to a law enforcement officer; or (3) While in an intoxicated condition or under the influence of controlled substances or drugs, operates a motor vehicle in this state and when so

5

there was no evidence that he acted with a culpable state of mind. Petitioner further states (without support) that the "clear legislative intent" of the statute is to punish those who single out law enforcement officers as the object of their violence, and petitioner states that all he did was drive negligently and inadvertently strike someone who happened to be a law enforcement officer. Petitioner further argues that the Missouri Court of Appeals erred when it interpreted the statute so that the criminal negligence requirement applies to the identity of the victim as opposed to the operation of the motor vehicle.

In reviewing the sufficiency of the evidence, the Court must evaluate whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard is "applied with explicit reference to the substantive elements of the criminal offense as defined by state law," id. at 324 n.16

The Missouri Court of Appeals found there was evidence from which a reasonable juror could have found beyond a reasonable doubt that petitioner was criminally negligent in causing physical injury to the police officer, a decision which is not contrary to or involving an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1). The evidence summarized by the Missouri Court of Appeals was as follows:

> The evidence shows that Bittick was on notice that there was at least one law enforcement officer in the area engaged in official business. He was obligated to slow down and exercise caution. Several witnesses driving along I-29 at the time of the incident testified that they saw a patrol car with its emergency lights flashing on the left hand shoulder close to the median

---

operating, acts with criminal negligence to cause physical injury to a law enforcement officer."

6

and that they saw Officer Meyers walking along the interstate. This was at 10:50 in the morning, in broad daylight. Officer Meyers was wearing his blue uniform. His patrol car was a marked patrol car with emergency lights. Bittick admitted he saw two patrol cars that morning. . . . Upon being loaded into the ambulance [after he hit Meyers], Bittick remarked to the emergency medical technician, 'I hit him, didn't I?' The next day, upon being informed that he had killed someone, Bittick responded, 'I hope it wasn't a police officer.'

Respondents' Ex. E, at 8-9. Criminal negligence is demonstrated when a person "fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." RSMo. § 562.016.5 (1994). This Court agrees with respondents and the Missouri Court of Appeals that this evidence is sufficient to support the verdict in petitioner's case.[3]

With respect to petitioner's argument that the Missouri Court of Appeals misinterpreted RSMo. § 565.082.1, this Court notes that a federal habeas court does not sit to determine whether state courts properly interpreted or applied state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994). Therefore, the Court will defer to the Missouri Court of Appeals' interpretation of the Missouri statute.

---

[3]Further, the Court agrees with respondents that the evidence presented at trial, viewed in the light most favorable to the prosecution, supports a finding that a reasonable juror could have concluded that petitioner knew or should have known he had hit a police officer. Although petitioner testified he never saw the officer (see Respondents' Exhibit B, at 771), if the jury disbelieved his testimony at trial, this becomes additional evidence of petitioner's guilt. See Wright v. West, 505 U.S. 277, 296 (1992)(plurality). The officer was in his uniform, near his police car, on a sunny day at 10:50 in the morning. As noted by respondents, petitioner would have had no reason to ask about hitting a police officer unless he thought the person he had hit might have been a police officer.

Accordingly, petitioner's second ground for relief is **DENIED.**

2. **Alleged ineffective assistance of appellate counsel in failing to argue on appeal that the petitioner ought to have been charged with involuntary manslaughter instead of assault on a law enforcement officer.**

Petitioner argues that the prosecutor did not have discretion to charge him with assault of a law enforcement officer because petitioner argues that the assault on a law enforcement officer statute is only intended to prosecute non-fatal injuries. Petitioner posits that there is a conflict between the assault on a law enforcement officer statute, RSMo. § 565.082, (which provides for conviction where a person causes physical injury to a law enforcement officer) and the involuntary manslaughter statute, RSMo. § 565.024 (which deals with a situation where the offender causes death to another individual). Petitioner argues that physical injury and death are not the same thing, and thus these statutes "conflict" as to the elements the state must prove. Petitioner states that when statutes conflict and cannot be reconciled, the more specific statute will control. Therefore, petitioner argues that the more specific statute would be the involuntary manslaughter statute, RSMo. § 565.024, as petitioner caused the death of the law enforcement officer, not his physical injury.

This Court agrees with respondents that petitioner has created a false conflict; there is no way that petitioner could have killed Officer Meyers by running into him with his car without causing physical injury to him. Thus, petitioner's conduct could have been found to have violated <u>both</u> RSMo. § 565.082 and § 565.024. The Missouri Court of Appeals held, "Where the same set of facts may constitute separate offenses, the State may proceed under either statute, and it rests within the discretion of the prosecutor to

determine which charge to bring." Respondents' Exhibit J, p. 8. This decision is not contrary to or involving an unreasonable application of clearly established federal law (see 28 U.S.C. § 2254(d)(1)); instead, the Missouri Court of Appeals' decision is congruent with clearly established federal law. See United States v. Batchelder, 442 U.S. 114, 125 (1979) (finding that defendant had no Constitutional right, when his conduct violated two statutes, to be charged under the statute providing for a lesser penalty). Therefore, the Court cannot find petitioner's appellate counsel to have provided ineffective assistance for failing to raise this claim in petitioner's direct appeal, as this claim is meritless. Petitioner's second ground for relief is **DENIED.**

3. **Alleged violation of rights under the Equal Protection Clause of the U.S. Constitution in that petitioner was sentenced disproportionately more harshly than other defendants.**

Petitioner argues in his amended petition that he was sentenced disproportionately more harshly than one person, Jaylne Nadler. Petitioner states that on the same date that he was sentenced to fifteen years imprisonment for assault on a law enforcement officer and five years each for three counts of assault in the second degree to be served consecutively (for a total sentence of 30 years), Jaylne Nadler was sentenced by the same judge to five years imprisonment for assault in the second degree and five years imprisonment for leaving the scene of an accident, to be served concurrently. Petitioner argues that his sentence was disproportionately harsh because he had no prior convictions and was a Navy veteran, whereas Ms. Nadler had a previous drunk driving conviction. Petitioner also notes that both he and Ms. Nadler caused a death due to a drinking and driving incident (according to petitioner, Ms. Nadler struck and killed one individual).

9

Petitioner argues that the only reason he received a longer prison sentence was because the individual he killed was a police officer, and petitioner argues that to run the sentences consecutively when the victim is a police officer and concurrently when the victim is not a police officer is unreasonable, illogical, and indicative of bias such that petitioner's equal protection rights were violated.

This Court agrees with respondents that the Missouri Court of Appeals' decision to reject this claim is not contrary to or involving an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1); Williams v. Illinois, 399 U.S. 235, 243 (1970) (finding that "there is no requirement that two persons convicted of the same offense receive identical sentences"). Further, to demonstrate an equal protection clause violation, petitioner would need to identify a class of similarly situated persons who were treated dissimilarly. See Geach v. Chertoff, 444 F.3d 940, 945 (8th Cir. 2006). This Court finds that petitioner has not demonstrated that he was similarly situated to Ms. Nadler. Instead, the Missouri Court of Appeals reasonably found:

> Neither of the cases Bittick relies on[4] involved the death of a law enforcement officer or, evidently, conviction of a class B felony. In one of Bittick's examples, the defendant was convicted of a second-degree assault and leaving the scene of an accident. The same judge sentenced her to *concurrent* five-year sentences. In another, the defendant was convicted of involuntary manslaughter, leaving the scene of an accident, and second-degree assault. He was sentenced (by a different judge) to fifteen years. The newspaper clipping on that case indicated that the judge was considering a callback after 120 days of 'shock' time.

Exhibit J, at 10 n.3. Although Bittick argues that both he and Nadler killed a person by

---

[4] In his state court proceedings, petitioner compared himself to both Ms. Nadler and another defendant. In the present petition, petitioner only compares himself to Ms. Nadler.

10

drinking and driving, there are several notable differences between their cases, as noted by respondents. Bittick killed a police officer and injured three other individuals, whereas Nadler killed a single civilian. Although Bittick argues that he was 55 years old and a twenty-year veteran of the Navy as factors that ought to have supported a lower punishment, Bittick has placed no facts in the record as to whether Nadler may have done anything to deserve a lighter sentence (for example, pleading guilty or taking responsibility for her actions). On such a sparse record, the Court cannot find that Bittick and Nadler are similarly situated for purposes of an equal protection clause analysis.

Accordingly, petitioner's third ground for relief is **DENIED.**

**4.** **Alleged ineffective assistance of trial counsel in not requesting an instruction on assault in the third degree as to each count of the amended information.**

Petitioner's final ground for relief is predicated on the theory of ineffective assistance of trial counsel. To establish a claim for relief based upon ineffective assistance of counsel, petitioner must show that counsel failed to exercise the skill and diligence that a reasonably competent attorney would have exercised under similar circumstances. Thomas v. Lockhart, 738 F.2d 304, 307 (8th Cir. 1984). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984). Petitioner must also demonstrate that he was prejudiced by the alleged incompetence of counsel by showing the existence of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

The Court agrees with respondents and the Missouri Court of Appeals that

11

petitioner's counsel's decision not to submit an instruction on assault in the third degree was part of a reasonable "all or nothing" strategy, as petitioner's defense at trial was that adverse weather conditions were the sole cause of the accident, and the accident was unavoidable. An instruction on assault in the third degree, which would require a finding of recklessness by the jury, would have been inconsistent with the defense theory of the case. See Respondents' Exhibit J, pp. 12-13. Under these circumstances, the Court will not find petitioner's counsel's conduct to constitute ineffective assistance of counsel under the Strickland standard.

Furthermore, petitioner has not demonstrated Strickland prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 689. Instead, as discussed by respondents and the Missouri Court of Appeals, (1) if the jury found Bittick guilty of the crimes charged, submitting a jury instruction on a lesser-included offense would have no effect on the jury's decision (see Strickland, 466 U.S. at 695); and (2) substantial evidence that petitioner was driving while intoxicated (and therefore criminally negligent) was presented at trial. As discussed by the Missouri Court of Appeals:

> That evidence included the testimony of witnesses who spoke with Bittick [before] the accident that morning, field sobriety tests, trooper observations at the scene, Bittick's own statements, and the results of blood alcohol tests. . . . A blood test performed shortly after the accident showed a blood alcohol content of .201. Bittick did not dispute that the test produced a reading of .201, and he admitted that he drank alcohol that morning. Apart from his own statement that he did not drink enough alcohol to register such a reading, Bittick did not present any evidence contradicting the State's evidence of intoxication.

Respondents' Exhibit J, p. 15.

Accordingly, petitioner's fourth ground for relief is **DENIED.**

12

## IV. CONCLUSION

Accordingly, for the above stated reasons, it is hereby **ORDERED** that Petitioner's Amended Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 (Doc. No. 24) is **DENIED.**


Date: 6/28/07　　　　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　Chief United States District Judge